563 So.2d 156 (1990)
FLORIDA PHYSICIANS INSURANCE COMPANY, Successor in Interest to Florida Physicians Insurance Reciprocal, Appellant,
v.
Richard L. STERN, M.D., and Physicians Protective Trust Fund, Appellees.
PHYSICIANS PROTECTIVE TRUST FUND, Appellant,
v.
FLORIDA PHYSICIANS INSURANCE COMPANY and Richard L. Stern, M.D., Appellees.
Nos. 89-0949, 89-0993.
District Court of Appeal of Florida, Fourth District.
June 6, 1990.
Rehearings and Clarification Denied July 17, 1990.
*157 James C. Rinaman, Jr. and Clifford C. Higby of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellant/appellee-Florida Physicians Ins. Co.
James C. Blecke, Miami, for appellee/appellant-Physicians Protective Trust Fund.
Richard M. Carnell, Jr. and Richard V. Neill of Neill Griffin Jeffries & Lloyd, Fort Pierce, for appellee-Stern.
DELL, Judge.
We sua sponte consolidate Case No. 89-0949 with Case No. 89-0993. These consolidated appeals arise out of a single declaratory final judgment which determined that separate insurance policies issued by appellants, Florida Physicians Insurance Company (FPIC) and Physicians Protective Trust Fund (PPTF), afforded coverage for a medical malpractice claim asserted against appellee, Richard L. Stern, M.D. We affirm.
In 1983, Dr. Stern, a radiologist, carried medical malpractice insurance with Florida Physicians Insurance Reciprocal, now known as FPIC. In September, 1983, he reviewed X-rays of Ann Raubeck, who had been injured in an automobile accident. Two months later, he learned that Mrs. Raubeck had become paralyzed. He notified FPIC of the potential claim and submitted a "professional liability incident notice." FPIC opened a claim file but closed it four months later since Mrs. Raubeck had not filed suit. FPIC acknowledged that if Mrs. Raubeck filed suit, the claim file would be reopened.
On September 30, 1984, Dr. Stern discontinued coverage with FPIC and purchased insurance from PPTF effective October 1, 1984. Dr. Stern informed PPTF of Mrs. Raubeck's potential claim when he made his initial application for coverage. PPTF also received a copy of the incident notice previously filed with FPIC. In September, 1985, Mrs. Raubeck, a/k/a Arline Kennedy, a/k/a Anne Kennedy, filed suit against Dr. Stern and other health care providers. PPTF received a copy of the complaint from Dr. Stern's radiology group. A PPTF claims representative instructed Dr. Stern that upon receipt of service of process he should forward the suit papers to PPTF. He followed these instructions and PPTF provided him with a defense in the malpractice litigation.
In November, 1986, a PPTF claims representative discovered, from reading PPTF's underwriting file, that Mrs. Raubeck's claim arose from the incident which occurred during Dr. Stern's coverage with FPIC. On November 7, 1986, the PPTF claims representative telephoned FPIC and suggested that FPIC, not PPTF, was the proper insurance carrier for the malpractice action. In response, Mr. Carey, FPIC's assistant claims manager, reopened the 1983 claims file and assigned it to a claims representative for investigation. On December 29, 1986, FPIC's vice-president, Mr. Brewer, sent a letter to PPTF stating that FPIC would not take part in the Raubeck litigation since Dr. Stern had breached his duty under the FPIC policy to immediately forward all legal process. FPIC further claimed they would suffer prejudice by undertaking Dr. Stern's defense at such a late date and that PPTF was estopped from refusing to continue to defend Dr. Stern since it had defended him for the previous fourteen months.
*158 Thereafter, PPTF filed suit against Dr. Stern and FPIC for declaratory relief. Dr. Stern answered and filed a counterclaim against PPTF and a cross-claim against FPIC contending that both insurers were liable for coverage under their respective policies. FPIC, in its responsive pleadings, denied coverage based on a defense of late notice and asserted, in its counterclaim, that PPTF was estopped from denying coverage. After a non-jury trial, the trial court determined that Dr. Stern was entitled to coverage from both FPIC and PPTF. PPTF's policy had limits of $1.5 million and FPIC's policy had limits of $3.5 million. The trial court, in order to avoid awarding a windfall to Dr. Stern, awarded him a total combined coverage of only $3.5 million, to be shared by the insurance companies in proportion to their respective limits.[1] The trial court also awarded Dr. Stern attorney's fees in the amount of $31,345.45 to be borne equally by the insurance companies.
Appellant FPIC contends the trial court erred when it found that section 627.426, Florida Statutes (1987) barred FPIC's denial of coverage; when it found that Dr. Stern's late notice did not prejudice FPIC, and; when it found that FPIC's failure to investigate the claim after notice in 1983 estopped them from claiming prejudice due to late notice.
The trial court found:
As to the Defendant/Counterdefendant FLORIDA PHYSICIANS INSURANCE COMPANY, the Court finds that said company is barred from raising a coverage defense to the claim of RICHARD L. STERN, M.D. by its failure to comply with the mandatory requirements of Sec. 627.426(2) Fla. Stat. because Mr. Cary [sic] reopened FPIC's claim file on November 13, 1986, and FPIC subsequently gave written notice of its refusal to take over and defend Dr. Stern denying coverage in Mr. Brewer's letter of December 29, 1986, a period of more than thirty days after November 13, 1986.
The Court further finds that said Defendant did not suffer any prejudice as a result of the delay in being notified of the filing of suit. The Court finds that had FPIC assumed the defense of the case when tendered to it [by] PPTF, its defense of the claim would not have been adversely affected because the fourteen months' delay did not change the complexion of the suit. The Court also finds that FPIC breached its duty to its insured, Dr. Stern, by failing to investigate the claim when it had prompt and early notice thereof pursuant to condition 2(a) of the policy in November of 1983, and is accordingly estopped to claim any prejudice due to late notice of the suit filed in September of 1985.
Section 627.426(2) provides, in pertinent part:
A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery... .
Id. We find record support for the trial court's findings that FPIC failed to comply with the mandatory time requirements of section 627.426(2). Dr. Stern notified FPIC of Mrs. Raubeck's potential claim in November of 1983. Dr. Stern changed carriers to PPTF in October of 1984 and in September of 1985 Mrs. Raubeck filed her lawsuit. Fourteen months later, on November 7, 1986, FPIC was notified of the lawsuit by a claims representative for PPTF. On November 13, 1986 a FPIC claims representative directed that the 1983 claims file, created after Dr. Stern's initial notice in 1983, be reopened. It was not until December 30, 1986, over thirty days after FPIC reopened the file, that FPIC notified PPTF and Dr. Stern of their intention not to provide coverage under their policy based on Dr. Stern's late notice of suit. The trial court correctly determined *159 that FPIC's act of reopening the file on November 13, 1986 constituted sufficient proof that it knew or should have known that it had a coverage defense. FPIC's letter, sent over a month later, failed to meet the requirements of section 627.426.
We also note that had FPIC complied with the statutory notice provisions, the record contains evidence which supports the trial court's finding that FPIC did not suffer prejudice as the result of the late notice of suit. Accordingly, we affirm the trial court's findings and final judgment awarding Dr. Stern coverage under FPIC's policy.
Appellant PPTF raises two issues. PPTF contends that the trial court erred when it found that estoppel barred it from denying coverage because it defended Dr. Stern for fourteen months with actual or constructive knowledge of a coverage defense and when the court determined PPTF had failed to comply with section 627.426. The trial court made the following findings of fact as to PPTF:
The Plaintiff PPTF's prayer that it be determined to afford no coverage to the Defendant RICHARD L. STERN, M.D. is denied. The Court finds that PPTF is estopped from denying coverage having voluntarily accepted and defended the case for more than one year's time with actual or constructive knowledge that the claim had been previously reported to FPIC and could therefore have been excluded from PPTF's coverage.
The Court further finds that PPTF failed to comply with the mandatory requirements of Sec. 627.426 Fla. Stat. and is thus precluded from raising any coverage defense.
Appellant argues that under current case law, in particular AIU Insurance Company v. Block Marina Investment, Inc., 544 So.2d 998 (Fla. 1989), Florida does not recognize the extension or creation of insurance coverage based on estoppel. Appellant also argues that the exception which this court recognized in Cigarette Racing Team, Inc. v. Parliament Insurance Company, 395 So.2d 1238 (Fla. 4th DCA 1981) does not apply because Dr. Stern failed to prove the requisite prejudice. In Cigarette Racing, Parliament Insurance Company attempted to deny insurance coverage based on a policy exclusion after it had defended the insured, a boat manufacturer, in tort for over sixteen months without a reservation of rights. This court held:
Admittedly, the general rule is that the doctrines of waiver and estoppel will not operate to create coverage in an insurance policy where none originally existed. Six L's Packing v. Florida Farm Bureau Mutual Insurance Co., 268 So.2d 560 (Fla. 4th DCA 1972), cert. discharged, 276 So.2d 37 (Fla. 1973). There is an exception to the rule, however, which provides that "when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage."
Id. at 1239-40; quoting; City of Carter Lake v. Aetna Casualty and Surety Co., 604 F.2d 1052, 1059 (8th Cir.1979) (other citations omitted). We find PPTF's reliance on AIU misplaced since in AIU the supreme court, in dicta contained in a footnote, reaffirmed the concept discussed in Crown Life Insurance Company v. McBride, 517 So.2d 660 (Fla. 1987):
A very narrow exception to this rule was recently recognized by this Court in Crown Life Ins. Co. v. McBride, 517 So.2d 660 (Fla. 1987), in which we held that the doctrine of promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice.
AIU, 544 So.2d 998, 1000 n. 1 (Fla. 1989).
PPTF's policy constituted a claims made policy. Mrs. Raubeck filed suit during PPTF's policy period and it cannot be argued that PPTF did not have timely notice of the potential claim since, in 1984, it received actual or constructive knowledge of the claim by the copy of the incident notice furnished with Dr. Stern's original application for coverage. Likewise, no issue exists as to timely notice of suit since PPTF learned of the lawsuit before Dr. *160 Stern received service of process and then directed him to forward all suit papers to them. PPTF defended the suit for some fourteen months before they reviewed their underwriting file and discovered that Dr. Stern had given FPIC notice of Mrs. Raubeck's potential claim. We find merit in the argument that PPTF's actions, in directing Dr. Stern to forward suit papers and its subsequent defense of the lawsuit, contributed to his failure to timely deliver the suit papers to FPIC. This, in turn, laid the foundation for FPIC's denial of coverage and also caused Dr. Stern to incur attorney's fees to establish coverage under one or both of the policies.
We reject the argument that our affirmance of the trial court's judgment finding coverage on the part of FPIC alleviates the prejudice Dr. Stern incurred as a result of PPTF's actions. Once established, the amount of prejudice, whether large or small, becomes irrelevant when determining the applicability of the doctrine of estoppel. See Boulevard National Bank of Miami v. Gulf American Land Corp., 189 So.2d 628 (Fla. 1966), on remand, 190 So.2d 67 (Fla. 3d DCA 1966); Enegren v. Marathon Country Club Condominium West Association, Inc., 525 So.2d 488 (Fla. 3d DCA 1988). Accordingly, we affirm the trial court's determination that PPTF is estopped from denying Dr. Stern coverage.
Finally, we hold the trial court erred when it concluded that PPTF is subject to the requirements of section 627.426, Florida Statutes (1987). While covered by FPIC, Dr. Stern learned of Mrs. Raubeck's paralysis and submitted an incident report to FPIC. PPTF cites AIU Insurance Company v. Block Marina Investment, Inc., 544 So.2d 998 (Fla. 1989), in support of its argument that Dr. Stern's knowledge of Mrs. Rauback's potential claim excluded that claim from coverage under the following provision of the PPTF policy:
This Indemnity Agreement does not apply:
(1) to liability of the Member arising out of any acts or omissions occurring after the Retroactive Date and prior to the beginning date of the Member's initial Indemnity Period, if the Member at the initial beginning date knew or could have reasonably foreseen that such prior acts or omissions might be expected to be the basis of a claim or suit;
PPTF contends that under AIU their defense, based on this exclusionary clause, constitutes a defense of no coverage rather than a "coverage defense," and so is not subject to the requirements of section 627.426. In AIU, the supreme court distinguished between a "coverage defense" and a defense of no coverage and stated:
Therefore, we hold that the term "coverage defense," as used in section 627.426(2), means a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained. Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy. However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law.
AIU, 544 So.2d at 1000.
While Dr. Stern acknowledges this distinction, he makes a compelling argument that where extrinsic facts are necessary to give effect to an exclusionary clause in a policy, notice under section 627.426 should be required. The PPTF policy is a "claimsmade" policy in which the prior claims exclusion requires knowledge on the part of the insured, either actual or constructive, of the prior claim to become effective. Dr. Stern contends that since application of the exclusion depends on facts extrinsic to the policy, notice to the insured, of the insurer's intent to invoke the exclusion, should be given pursuant to section 627.426.
Our reading of AIU compels us to hold, however, that the trial court erred when it *161 found that PPTF's defense to coverage, based on the exclusionary clause in its policy, was subject to the requirements of section 627.426. Nevertheless, we certify the following question as being of great public importance:
WHETHER A DEFENSE TO COVERAGE, BASED UPON AN EXCLUSIONARY CLAUSE IN AN INSURANCE POLICY WHICH IS DEPENDENT UPON EXTRINSIC FACTS FOR ITS EFFECT, IS SUBJECT TO THE REQUIREMENTS OF SECTION 627.426 FLORIDA STATUTES.
Accordingly, we affirm the trial court's final judgment in all respects except that we reverse that part of the judgment which found PPTF's defense to coverage subject to the requirements of section 627.426, Florida Statutes (1987).
AFFIRMED in part and REVERSED in part.
LETTS and WARNER, JJ., concur.
NOTES
[1] The parties do not contend that this proportionate award was error.