The DOCTORS' COMPANY, a California corporation, Appellant (Plaintiff),

v.

The INSURANCE CORPORATION OF AMERICA, a Texas corporation; and Stanley W. Peters, MD, Appellees (Defendants). (Two Cases).

Nos. 92–68, 92–270.

Supreme Court of Wyoming.

Dec. 6, 1993.

Arthur H. Downey and Laurel E. Adams, Denver, CO, for Doctors' Co.

Judith A. Studer of Schwartz, Bon, McCrary & Walker, Casper, for Insurance Corp. of America.

Robert M. Shively of Murane & Bostwick, Casper, for Stanley W. Peters, M.D.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

In these consolidated appeals, we are required to determine which "claims made" professional liability insurer provides coverage when a potential claim is reported to the former insurer but the actual claim is made during the coverage period of the present insurer. The present insurer of a Wyoming physician challenges the district court's grant of summary judgment in favor of the former insurer. The district court determined that no claim, as defined by the former insurer's policy, had been made during that company's applicable coverage period.

We affirm.

## I. ISSUES

In Appeal No. 92–68, The Doctors' Company, appellant and the present insurer, identifies the following issues:

1. Whether the trial court erred in holding, as a matter of law, that no "claim" had been made against Stanley W. Peters, M.D., prior to the expiration of his insurance policy with the Insurance Corporation of America.

2. Whether the record shows, as a matter of law, that notice of the *Wardell* claim was given to the Insurance Corporation of America during its coverage period.

3. Whether the trial court erred in finding that there were no material issues of fact existing between the parties to this action.

Appellee, Stanley W. Peters, M.D., presents a single issue for this appeal:

Whether the failure of the appellant to contest its policy's coverage for Dr. Peters in the underlying personal injury action either here or in the court below acts as a waiver or an estoppel of its previously made reservation of rights as to that coverage.

The Insurance Corporation of America, appellee and the former insurer, questions:

Whether the court erred in holding, as a matter of law, that there was no coverage for Dr. Peters for the Wardell incident under the policy issued by the Insurance Corporation of America.

More specifically, this issue has two subparts. They are:

A. Whether the trial court erred in holding as a matter of law that a "claim", as that term is defined in the policy, was not made during the policy period.

B. Whether The Doctors['] Company can rely upon a self-serving, conclusory affidavit prepared by its counsel to raise a disputed issue of fact in order to defeat summary judgment.

In Appeal No. 92–270, appellant, The Doctors' Company, questions whether the district court abused its discretion in denying relief from judgment under W.R.C.P. 60(b).

Appellee, Stanley W. Peters, M.D., takes no position on the issue presented in this appeal.

Appellee, The Insurance Corporation of America, responds with the following issues:

1. Did the lower court's finding that the appellant failed to bring itself within Rule 60(b) constitute an abuse of discretion?

2. Did the lower court err, as a matter of law, in finding that "Plaintiff's Responses To Defendant West Park Hospital And Board of Trustees' First Interrogatories" would not [a]ffect the court's prior decision granting summary judgment to [The Insurance Corporation of America]?

## II. FACTS

On May 13, 1987, Neal Wardell (Wardell) fell on the school playground in Burlington, Wyoming during recess. The seven-year-old child struck the back of his neck on a rock. Injured and complaining of pain and weakness in his arms and legs, Wardell was immobilized and brought, by ambulance, to West Park Hospital in Cody, Wyoming.

At the hospital, Stanley W. Peters, M.D. (Dr. Peters), an emergency room physician, examined Wardell along with an orthopedic surgeon. The diagnostic process included a range of motion test. At some point, Wardell was permitted to walk and use the bathroom. However, Wardell's neurological functions continued to diminish and the doctors ordered him transferred, by helicopter, to St. Vincent Hospital in Billings, Montana. The next day, as his condition deteriorated, the treating physician in Billings transferred Wardell to Children's Hospital in Denver, Colorado. Wardell left that hospital a quadriplegic with permanent injury to the seventh cervical vertebra.

On May 12, 1989, Wardell and his parents (collectively Wardell) simultaneously filed tort claims under the Wyoming Gov-

ernmental Claims Act against the Big Horn County School District No. 1 and West Park Hospital and filed a negligence action against the orthopedic surgeon and West Park Hospital. The negligence action alleged a breach in the standard of care by failing to keep Wardell immobilized. As discovery proceeded, it was determined that Dr. Peters was an independent contractor and not a hospital employee at the time he treated Wardell. Consequently, on November 13, 1989, Wardell and his parents filed a separate action against Dr. Peters alleging negligence. Following a settlement of the claims against the Big Horn County School District No. 1 and West Park Hospital, the underlying negligence actions continued, on remand, following this court's decision in *Wardell v. McMillan*, 844 P.2d 1052 (Wyo.1992).

When Dr. Peters treated Wardell, Insurance Corporation of America (ICA) insured Dr. Peters for professional liability on a "claims made" basis. ICA also insured Dr. Peters on a "claims made" basis at the time the May 12, 1989 Wardell complaint was filed against the orthopedic surgeon and West Park Hospital. On September 13, 1989, Dr. Peters completed an application for renewal of his ICA policy in which he stated: "I was involved 2 years ago in [a] case in which this hospital [West Park Hospital] and [a] consulting physician [were] sued recently. I am *not* sued but am named in the interrogatory. Note: thus far I have *not* been named in suit." (Emphasis in original.)

On October 16, 1989, Dr. Peters completed an application for professional liability insurance on a "claims made" basis with The Doctor's Company (TDC). In describing potential claims, Dr. Peters identified Wardell as a former patient and indicated: "I was involved in this case 2+ years ago; I was *not* named in suit (consultant, hospital and nurses were)[;] I felt it prudent to report it to ICA [and] did so. I was *not* sued." (Emphasis in original.) Dr. Peters identified the status of the claim as an open claim, but "[n]ot against me."

Coverage under Dr. Peters' professional liability insurance with ICA expired on No-

vember 1, 1989. On the same date, TDC issued a professional liability policy on a "claims made" basis insuring Dr. Peters. The TDC policy included retroactive coverage to November 1, 1986.

Service of process for the November 13, 1989 Wardell complaint against Dr. Peters occurred on December 1, 1989. Dr. Peters promptly notified his local insurance agent, ICA and TDC. Dr. Peters' handwritten letter to ICA reported:

This letter is to inform you that I was finally named in a law suit of alleged malpractice. The incident occurred 5/13/87—the patient's name was Neal W. Wardell. I notified Norm Cooper of Lander Valley Ins. verbally a long time ago and notified you on my application renewal form a couple months ago—at that time I was not sued—now I am. I'm waiting to hear from you.

Sincerely,

[Signature]

P.S. My papers were served 1 Dec. 89. [Initials]

TDC notified Dr. Peters that under the terms of that company's professional liability policy, no coverage would be provided. On behalf of Dr. Peters, TDC tendered the defense of the November 13, 1989 Wardell complaint to ICA. ICA refused determining that no coverage existed under its former policy with Dr. Peters because the claim, defined by ICA as a "demand for money, services or property made upon you," was not actually made during the coverage period.

TDC filed the declaratory judgment action that is the subject of Appeal No. 92–68 to determine the respective liabilities, if any, of ICA and TDC to Dr. Peters. ICA denied liability maintaining that because Dr. Peters had failed to purchase an Extended Reporting Endorsement on his ICA policy, "claims made" coverage had expired before the actual claim was made. ICA counterclaimed that sole liability for Dr. Peters' coverage belonged to TDC. Dr. Peters asserted that either ICA or TDC, under their respective policies, were required to tender a defense to the underly-

ing negligence action and be liable for the payment of any judgment from that action.

The district court ruled, on cross motions for summary judgment, in favor of ICA. The district court found, despite Dr. Peters report to ICA of a potential claim following the filing of the May 12, 1989 Wardell complaint against the hospital and the orthopedic surgeon, no actual claim was made against Dr. Peters until the November 13, 1989 Wardell complaint was filed and service of process was accomplished on December 1, 1989. The district court determined that the language of the ICA policy was unambiguous and ICA had no coverage obligation because that policy expired before a "demand for money, services or property" was made upon Dr. Peters. Since the actual claim was made after the effective date of the professional liability policy issued by TDC, the district court determined that coverage existed for Dr. Peters under the TDC policy. TDC appeals the district court's order.

After Appeal No. 92–68 was filed, TDC sought a limited remand to permit the district court to consider a motion for relief from judgment under W.R.C.P. 60(b). This court denied the motion, but established a procedure permitting district courts to consider W.R.C.P. 60(b) motions during the pendency of an appeal. *The Doctors' Co. v. The Insurance Corp. of America*, 837 P.2d 685 (Wyo.1992). TDC filed a motion for relief from judgment under that procedure maintaining that due to mistake, inadvertence, or excusable neglect, an interrogatory response had been omitted from supporting exhibits on behalf of TDC's motion for summary judgment. The interrogatory, from West Park Hospital, requested from Wardell the names of agents and employees of the hospital that Wardell alleged were negligent. Wardell responded that Dr. Peters was one of those agents or employees. The district court denied the W.R.C.P. 60(b) motion. The district court ruled that the interrogatory response would not have changed its prior decision. TDC filed Appeal No. 92–270 to challenge that decision. This court ordered both appeals consolidated.

## III. DISCUSSION

The fundamental issue of this declaratory judgment action questions whether ICA or TDC should defend Dr. Peters and possibly pay any judgment against him in the underlying negligence action. The answer requires this court to interpret the insurance policies governing the relationships between the respective parties. Insurance policies are contracts. *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo.1988); *Ricci v. New Hampshire Ins. Co.*, 721 P.2d 1081, 1085 (Wyo.1986). As with any contract, interpretation of an unambiguous contract presents an issue of law which may be appropriately considered by summary judgment. *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 651 (Wyo.1989); *Ricci*, 721 P.2d at 1085. A summary judgment will be affirmed on appeal if there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56(c). No special deference is accorded to the district court's decision on issues of law. *Darlow v. Farmers Ins. Exchange*, 822 P.2d 820, 823 (Wyo.1991).

Our established rules of contract interpretation apply to insurance policies. *Albany County School Dist. No. 1*, 763 P.2d at 1258; *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 31 (Wyo. 1983). Interpretation is the process of ascertaining the meaning of the words used to express the intent of the parties. *Commercial Union, Ins. Co. v. Stamper*, 732 P.2d 534, 539 (Wyo.1987); 4 Walter H.E. Jaeger, *Williston on Contracts* § 600A at 286 (3d. ed. 1961). The intent of the parties is determined by considering the instrument which memorializes the agreement of the parties as a whole. *Klutznick v. Thulin*, 814 P.2d 1267, 1270 (Wyo.1991). This court utilizes a standard of interpretation for insurance policies which declares that the words used are given the plain meaning that a reasonable person, in the position of the insured, understands them to mean. *Worthington v. State*, 598 P.2d 796, 806 (Wyo.1979); *Wilson v. Hawkeye Casualty*

*Co.,* 67 Wyo. 141, 215 P.2d 867, 873–74 (1950). *See also Abifadel v. Cigna Ins. Co,* 8 Cal.App.4th 145, 9 Cal.Rptr.2d 910, 919 (1992).

If the language is unambiguous, our examination is confined to the "four corners" of an integrated contract and extrinsic evidence is not admitted to contradict the plain meaning. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo.1993). The language of an insurance policy is ambiguous if it is capable of more than one reasonable interpretation. *Helfand v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295, 299 (1992). Because insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer. *Albany County School Dist. No. 1,* 763 P.2d at 1258; 7 Walter H.E. Jaeger, *Williston on Contracts* § 900 at 19, 29 (3d ed. 1963). However, the language will not be " 'tortured' " to create an ambiguity. *Stamper,* 732 P.2d at 539 (*quoting McKay v. Equitable Life Assur. Soc. of United States,* 421 P.2d 166, 168 (Wyo.1966)).

Traditionally, liability insurance has consisted of "occurrence" policies in which the insurer provides coverage if the covered event or injury occurs during the policy period, regardless of the time the actual claim is made. *See St. Paul Fire and Marine Ins. Co. v. House,* 315 Md. 328, 554 A.2d 404, 406 (1989) (discussing differences between "occurrence" and "claims made" policies). A problem posed by such policies is that in product liability and in professional liability actions, the injury usually occurs during one policy period and the claim is made during subsequent policy periods. The series of product liability actions against asbestos manufacturers illustrate the time that some claims require to mature. *See, e.g., Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). As a means of achieving a greater degree of underwriting certainty, many liability insurers utilize "claims made" policies. Under these policies, liability is indemnified when a claim is made or made and reported to the insurer during the policy term. *See generally,* 1 Rowland H. Long, *The Law of Liability Insurance,* § 1.08[4] (1991); Robert Knowles, *The Reporting Of "Potential Claims" Under A Claims–Made Policy,* 35 For The Defense 23 (July 1993).

If Dr. Peters' professional liability insurance policy with ICA had been an "occurrence" type, ICA would have had to provide coverage because the negligent treatment for which liability is alleged by Wardell occurred during the ICA policy period. However, the ICA policy conspicuously states it is a "claims made" policy. Under the policy, ICA agreed to pay "all sums," up to the coverage limit, which Dr. Peters became legally obligated to pay as damages for medical services he provided or should have provided if the "claim" was "first made" during the policy period. The terms "claim" and "first made" are defined in the ICA policy:

> A claim is defined as a demand for money, services or property made upon you. A claim will be considered as being first made when you receive notice of such demand.

We agree with the district court that the language of the ICA policy is plain and unambiguous.

TDC argues that Dr. Peters' knowledge of the negligence action against the orthopedic surgeon and West Park Hospital, coupled with the knowledge that Dr. Peters treated Wardell should constitute a sufficient "claim" under the ICA policy. TDC suggests support for its position exists in the language of the May 12, 1989 Wardell complaint, which states:

> After the emergency room physicians made a diagnosis that there was spinal cord involvement, Neal Wardell was placed in a room and was negligently allowed to get up and move about including allowing him to use the bathroom when he had known neurological deficits and when the hospital, its agents and

employees knew or should have known that any movement of the spinal cord when there is demonstrable neurological deficit is a deviation from the standard of care.

TDC maintains Dr. Peters knew he was one of the emergency room physicians against whom negligence was alleged.

The basic weakness in the TDC position is that Dr. Peters was not a named party in the May 12, 1989 Wardell complaint. The ICA definition of "claim" requires a "demand * * * made upon you [the insured]." Dr. Peters was never served in connection with the action filed against the orthopedic surgeon and West Park Hospital. Even if we assume Dr. Peters was one of the "emergency room physicians" generally described in the May 12, 1989 Wardell complaint and assume Dr. Peters was aware of the specific allegations made in that action, the undisputed material fact remains that there was no "demand" made against Dr. Peters in the May 12, 1989 Wardell complaint.

A "demand" is a word for which a plain meaning, as used by a reasonable person in the position of the insured, may be determined. *Wilson,* 215 P.2d at 873–74. A "demand" is the assertion of a legal right. Black's Law Dictionary 429 (6th ed. 1990). A "demand" is made by asking with authority or challenging as due. *Smith v. Municipal Court of Glendale Judicial Dist., Los Angeles County,* 167 Cal.App.2d 534, 334 P.2d 931, 934 (1959); *Snipes v. Snipes,* 55 N.C.App. 498, 286 S.E.2d 591, 595, *aff'd,* 306 N.C. 373, 293 S.E.2d 187 (1982). The filing of a lawsuit against a named party certainly constitutes a "demand." *Berry v. McLeod,* 124 Ariz. 346, 604 P.2d 610, 613 (1979). A letter directed to the party against whom a claim of right is asserted also constitutes a "demand." *Southwestern Life Ins. Co. v. Green,* 768 S.W.2d 445, 449 (Tex.App.1989). However, it would torture the meaning of "demand" to find that the filing of a lawsuit in which Dr. Peters was not a named party, or the mere presence of Dr. Peters' name in an interrogatory response from a party to a lawsuit, constituted a demand against Dr. Peters.

Dr. Peters understood that no "demand" had been made against him when the May 12, 1989 Wardell complaint was filed or when he was named in the interrogatory responses of Wardell or of West Park Hospital. In his application for renewal, Dr. Peters informed ICA of the pending action and the fact that he was named in an interrogatory and emphatically stated: "Note: thus far I have *not* been named in suit." (Emphasis in original.) In his application for coverage to TDC, Dr. Peters also informed that company of the pending action, but declared: "I was *not* sued." (Emphasis in original.)

We hold that no "demand" was made by Wardell upon Dr. Peters sufficient to constitute a "claim" under the ICA policy prior to the expiration of that policy on November 1, 1989. We agree with the view stated in *Abifadel,* 9 Cal.Rptr.2d at 920:

> In defining "claims," the law focuses on the claimant's formal demands for service or payment and does not recognize a request for an explanation, the expression of dissatisfaction or disappointment, mere complaining, or the lodging of a grievance as a claim. In both its ordinary meaning and in the interpretation given to it by other courts in similar circumstances, a claim is a demand for something as a right or as due.

As a matter of law, the filing of a lawsuit which omits the insured as a named party and fails to accomplish service of process to the insured does not constitute a "claim" against the insured.

Alternatively, TDC argues that the language of the ICA policy permits the time of making the actual claim to relate back to the time that Dr. Peters had "notice" of a potential claim. TDC achieves this interpretation by a tortured reading of the sentence that defines "first made" in the ICA policy. We do not find ambiguity in this provision.

Under the ICA policy, "[a] claim will be considered as being first made when you receive notice of such demand." Reading the ICA policy as a whole, this sentence makes the ICA policy a "claims made" policy as distinguished from a "claims made and reported" policy. The plain meaning that a reasonable insured would give to "notice" is the actual receipt of a demand for money, services or property in the form of service of process, a letter, or possibly an oral declaration. *See Smith v. Southeastern Properties, Ltd.,* 77F S.W.2d 106, 109 (Tenn.App.1989) (holding, under Rules of Civil Procedure, "notice" means notice that a lawsuit asserting a legal claim has been filed).

The practical application of "notice" as used in the ICA policy is easily demonstrated. The Wardell complaint against Dr. Peters was filed on November 13, 1989. Service of process to Dr. Peters was accomplished on December 1, 1989. Under the plain language of the ICA policy, the date the actual "claim" was made became December 1, 1989. Dr. Peters received "notice," in the form of service of process, of the "demand" made against him on that date. December 1, 1989 was one month after the ICA policy expired.

As used in the ICA policy, "notice" does not equate with "knowledge." Dr. Peters had knowledge of a potential claim against him because of the action filed against the orthopedic surgeon and West Park Hospital. He communicated this knowledge to both ICA and TDC in the insurance applications. Dr. Peters' knowledge of a potential claim and his communication to ICA, however, did not create an actual claim under the unambiguous language of that company's policy.

■ The definition of "claim" in the ICA policy and the customary use of the term in the insurance industry are distinguishable. The "claim" defined by the ICA policy is an assertion of legal rights made against the insured (hereinafter legal claim). The customary reference in the insurance industry to a claim is the shortened form of claim for benefits. A claim for benefits is a demand for indemnifica-

tion under terms of a policy of insurance made by the insured and submitted to the insurer (hereinafter insurance claim). *See* Wyo.Stat. § 26–15–124(a) (1991).

The position TDC asserts relies upon Dr. Peters' knowledge of a potential legal claim and his application for renewal of the ICA policy as creating an insurance claim. We agree that in some circumstances a report of a potential claim could create liability. In *St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp.,* 584 So.2d 1316, 1322–23 (Ala.1991), the court held that ambiguous language in a "claims made" policy failed to distinguish between an insurance claim and a legal claim. The insurer had failed to define the meaning of the term "claim." *Id.* at 1322. As a result, the court determined that the insured's report of a potential claim, in the manner required by the policy, constituted an actual claim. The insurer was required to defend and pay claims despite the fact that the actions against the insured were filed after the policy expired.

The language of the ICA policy, however, cannot be read to create a "claim," as defined by the policy, from a report of a potential claim. ICA required its insured to report a "claim incident" to the company by telephone:

In order to provide you with the best possible claim defense, we ask that the following matters be promptly reported to the Claim Division of ICA.

1. A serious complaint by a patient or client, especially those coupled with a threat of legal action.

2. An attorney's request for medical records if the reason for the request is unclear.

3. An attorney's letter advising the investigation of a possible claim.

4. Receipt of Suit Papers—If suit papers are received, a Phone Notification should be made to ICA the same day of receipt. Because there is a time limit for answering a lawsuit, these matters must be reported immediately.

A claim is defined as a demand for money, services or property made upon you. While the abovementioned items may not qualify as a claim and are, therefore, not eligible for coverage under the policy, they should be reported to us.

It is undisputed that Dr. Peters never used this procedure to report a potential claim. Even if he had, until Dr. Peters received service of process of the November 13, 1989 Wardell complaint, no "claim" was made.

▮ TDC assumes too much from expressions of subjective intent, as derived from the May 12, 1989 Wardell complaint and the interrogatories. TDC contends that all parties responsible for Wardell's treatment should have known they would be subject to liability. While Wardell may have been misinformed about Dr. Peters' status as an independent contractor of West Park Hospital, the assertion of a legal right, a demand, against Dr. Peters was not communicated until the November 13, 1989 Wardell complaint was filed and service of process was accomplished on December 1, 1989. The point at which Wardell's intent to make a demand upon Dr. Peters might be supposed cannot substitute for the actual presentation of a demand.

We hold as a matter of law that under the unambiguous language of the ICA policy, ICA had no coverage obligation for the claim made by Dr. Peters as a result of the Wardell action against him. The first point at which a "claim," as defined by the ICA policy, was asserted against Dr. Peters was December 1, 1989. Coverage under the ICA policy expired on November 1, 1989. Our holding that ICA had no coverage obligation foretells TDC's coverage obligation to Dr. Peters.

The TDC professional liability policy issued to Dr. Peters conspicuously states it is a "claims made" policy. More properly, it may be considered a "claims made and reported" policy since the coverage is limited to "claims made" against the insured during the policy period and first reported to TDC during the policy period. TDC agrees, in the policy, to pay "all sums," up to the coverage limit, which Dr. Peters becomes legally obligated to pay as damages if four requirements are met:

1. the *claim* is first reported to [TDC] during the *policy period;* and

2. the *claim* arises from [Dr. Peters] rendering or failing to render *professional services* in the *territory* during the *policy period* as stated on the Declarations Page; and

3. the *claim* and the *professional services* are within the coverage of your policy and not excluded by it; and

4. the amount paid does not exceed [TDC's] *per-claim limit of liability* and *annual aggregate limit of liability* applicable to [Dr. Peters].

(Emphasis in original.) A "claim" is defined, by the TDC policy:

*Claim* means

a. written notice, demand, crossclaim, or lawsuit (including an arbitration proceeding) first reported to [TDC] during the *policy period* which alleges disability, sickness, disease, or death to a patient arising from your rendering or failing to render *professional services* during the *policy period.*

b. your or your legal representative's written notice to [TDC], which is first reported during the *policy period,* that a demand, cross-claim, or lawsuit which alleges disability, sickness, disease, or death to a patient arising from your rendering or failing to render *professional services* during the *policy period* may be made against you by the patient or the patient's legal representative.

(Emphasis in original.) The TDC policy is unambiguous and we shall apply our rules of contract interpretation to its language.

▮ Dr. Peters' report of his receipt of the service of process for the November 13, 1989 Wardell complaint constituted a "claim" under the plain meaning of the TDC policy. The TDC policy states that a *"[c]laim* means * * * [a] lawsuit * * * first reported to [TDC] during the *policy*

*period* which alleges disability * * * to a patient arising from your rendering * * * *professional services* during the *policy period."* (Emphasis in original.) This "claim" was made and reported by Dr. Peters after the November 1, 1989 effective date of the TDC policy within the "policy period" defined by TDC. We affirm that TDC must defend and indemnify Dr. Peters against the Wardell negligence action under the terms of the TDC professional liability policy.

In support of its motion for summary judgment before the district court, TDC maintained that coverage for the November 13, 1989 Wardell complaint was excluded. Dr. Peters challenged on appeal that either TDC had failed to preserve this issue or that waiver or estoppel prevented TDC from asserting that coverage for a potential claim is excluded. In the Reply Brief of Appellant, TDC repeated its position that coverage was excluded under terms of an endorsement to the policy. ICA responded by filing a motion to strike portions of the TDC Reply Brief which argued coverage was excluded. We deny the motion to strike and hold that estoppel applies to prevent TDC from attempting to exclude coverage.

 Initially, we must consider whether this issue is properly before this court. Generally, an issue not raised or supported with cogent argument in the brief of appellant is considered waived. *Triton Coal Co., Inc. v. Mobil Coal Producing, Inc.,* 800 P.2d 505, 512 (Wyo.1990); W.R.A.P. 7.01(d) (formerly W.R.A.P. 5.01). However, only the timely filing of a notice of appeal is jurisdictional.

> The failure to comply with any other rule of appellate procedure, or any order of court, does not affect the validity of the appeal, but is ground only for such action as the appellate court deems appropriate, including but not limited to: citation of counsel or a party for contempt; *refusal to consider the offending party's contentions;* assessment of costs; dismissal; or affirmance.

W.R.A.P. 1.03 (formerly W.R.A.P. 1.02) (emphasis added). This court has previously considered issues not properly raised by appellants when review was permitted by the record and the facts. *See, e.g., J & M Investments v. Davis,* 726 P.2d 96, 97 n. 2 (Wyo.1986). *See also, Dale Bland Trucking, Inc. v. Kiger,* 598 N.E.2d 1103, 1105 (Ind.App.1992) (holding the court would consider issues raised for the first time on appeal in a reply brief if failure to comply with appellate rules did not impede review of the issue).

TDC did not raise any issue regarding exclusion of coverage under the TDC policy in its Brief of Appellant. Dr. Peters, in support of the district court's ruling, however, raised the issue of coverage under the TDC policy in the Brief of Appellee. Dr. Peters said waiver or estoppel should prevent TDC from denying coverage despite the tender of a defense under a reservation of rights. TDC then replied to Dr. Peters' argument.

A reply brief is "limited to those new issues and arguments raised by the brief of appellee." W.R.A.P. 7.03 (formerly W.R.A.P. 5.03). TDC responded to the argument presented by Dr. Peters that coverage existed under the TDC policy. We will consider the issue. *Rome v. Commonwealth Edison Co.,* 81 Ill.App.3d 776, 36 Ill.Dec. 894, 896–97, 401 N.E.2d 1032, 1034–35 (1980) (holding the court would consider an argument raised in the brief of appellee and in the reply brief of appellant).

TDC argues that because Dr. Peters possessed knowledge of a potential claim prior to the effective date of the TDC policy, coverage was excluded for that conduct. The TDC policy issued to Dr. Peters contains a conversion coverage endorsement providing retroactive coverage:

> [TDC] by this Endorsement E310 agrees to provide coverage under your policy for *claims* arising out of your rending or failing to render *professional services* during the period from 11–1–86 to 11–1–89 *but only if* all of the requirements below are met:
>
> 1. The *claim* is first reported to [TDC] during the policy period as stated on the Declaration Page; and

2. The **claim** and the **professional services** are within the coverage of your policy and not excluded by it; and

3. The amount paid does not exceed [TDC's] **per-claim limit of liability** and **annual aggregate limit of liability** applicable to you; and

4. You were not aware of any conduct, circumstances or incidents during the period prior to the **policy effective date** of this policy which could reasonably be expected to result in a **claim.**

(Emphasis in original.)

TDC finds an exclusion under the language of paragraph four for coverage of any claims arising from Dr. Peters' treatment of Wardell. TDC summarized its position before the district court:

If the court finds that no claim was made in September of 1989 to ICA, it must find no coverage under any policy, as it is undisputed that Peters specifically identified this incident on his TDC policy application as an incident or event of which he had prior knowledge that could reasonably be expected to result in a claim, and which, therefore, is undisputedly **excluded** from coverage under the TDC policy.

(Emphasis in original.) We do not accept this position.

 In contract law, promissory estoppel is recognized as both a cause of action and a defense. " 'If an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages.' " *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 813 (Wyo. 1992) (*quoting Goldstick v. ICM Realty*, 788 F.2d 456, 462 (7th Cir.1986)). As applied to insurance contracts, promissory estoppel acts to prevent an insurer, under specific circumstances, from denying coverage when an insurance contract exists. 3 Long, *supra*, at § 17.20.

 Promissory estoppel prevents a denial of insurance coverage in situations where fraud or injustice would otherwise result. *Crown Life Ins. Co. v. McBride*, 517 So.2d 660, 662 (Fla.1987) (collecting cases applying promissory estoppel to insurance contracts). *See also*, W.C. Crais, Annotation, *Comment Note: Doctrine of Estoppel or Waiver As Available To Bring Within Coverage Of Insurance Policy Risks Not Covered By Its Terms Or Expressly Excluded Therefrom,* 1 A.L.R.3d 1139 (1965 & Supp.1993). Injustice is found when the promisor reasonably should have expected that the affirmative representations he or she made would induce the promisee into action or forbearance of a substantial nature and where the promisee shows such detrimental reliance. *Crown Life Ins. Co.*, 517 So.2d at 662. Promissory estoppel is distinguished from equitable estoppel and waiver which are generally not available to bring within coverage of an insurance policy a risk which is not covered by the terms of the policy or expressly excluded. *Sowers v. Iowa Home Mut. Cas. Ins. Co.*, 359 P.2d 488, 493 (Wyo.1961). *See generally, United Self Insured Services v. Faber*, 561 So.2d 1358 (Fla.App.1990) (applying doctrine of promissory estoppel).

In *Florida Physicians Ins. Co. v. Stern*, 563 So.2d 156, 160 (Fla.App.1990), the court considered the application of promissory estoppel in the context of a "claims made" professional liability policy which contained an exclusion for known prior incidents that could be reasonably foreseen as becoming the basis of a claim or suit. A physician decided to change coverage from one insurer to another. As a part of the application process, the physician informed the insurer of a potential claim from a paralyzed former patient. *Id.* at 157. The former patient filed suit during the coverage period of the successor insurance company. *Id.* The successor insurer, after defending the action for over a year, determined that the former insurer should have provided coverage. *Id.* at 160. The court held promissory estoppel prevented the successor insurer from denying coverage. *Id.*

 TDC created detrimental reliance on the part of Dr. Peters when it issued a professional liability insurance policy without language expressly excluding coverage for the potential claim of Wardell by name. Dr. Peters specifically informed TDC in the

application for insurance coverage of circumstances surrounding the potential claim. TDC responded by issuing a policy with a retroactive date of November 1, 1986, prior to Dr. Peters' treatment of Wardell. The retroactive coverage created an affirmative representation that coverage for any potential claim by Wardell would be provided by TDC. Dr. Peters was induced by this representation to permit his ICA policy to expire without either purchasing an Extended Reporting Endorsement, so called "tail" coverage, or simply renewing professional liability coverage with that insurer. Under these circumstances, promissory estoppel operates to prevent an injustice which would result from enforcement of the general exclusion contained in the TDC policy for the insured's knowledge of prior conduct which could reasonably be expected to result in a claim.

 Unlike *Stern*, 563 So.2d 156, TDC conducted its defense of Dr. Peters under a reservation of rights which, if effective, preserves coverage defenses. Dr. Peters received two letters from TDC which are characterized as constituting the reservation of rights. The first letter, dated December 28, 1989, from TDC's Washington Office Claims Manager, stated: "Upon further review of the aforementioned case [the November 13, 1989 Wardell complaint], we continue to believe that there would be no coverage for this claim under policy no. 41660–0001, provided by The Doctors' Company." The letter then stated that a formal tender of defense had been made to ICA. The second letter, dated January 15, 1990, also from TDC's Washington Office Claims Manager informed Dr. Peters that ICA had rejected the tender of defense. TDC said it planned to file a "declaratory relief action to acquire coverage for this claim under your ICA policy."

 In *Albany County School Dist. No. 1*, 763 P.2d at 1262, this court held that a reservation of rights letter from a liability insurer preserved coverage defenses because the letter outlined several possible grounds for denial of coverage. The notice of a reservation of rights must make spe-

cific reference to the policy defense which the insurer may assert. *Doe v. Illinois State Medical Inter Insurance Exchange*, 234 Ill.App.3d 129, 174 Ill.Dec. 899, 903, 599 N.E.2d 983, 987 (1992). A bare notice of a reservation of rights is insufficient. *Royal Ins. Co. v. Process Design Associates, Inc.*, 221 Ill.App.3d 966, 164 Ill.Dec. 290, 295, 582 N.E.2d 1234, 1239 (1991).

We hold the letters sent to Dr. Peters by TDC were ineffective, as a matter of law, in providing notice of a reservation of rights. We do not find in either of the letters even a bare notice of a reservation of rights. *Royal Ins. Co.*, 164 Ill.Dec. at 295, 582 N.E.2d at 1239. The letters do not specifically refer to TDC providing a defense under a reservation of rights. TDC did not inform Dr. Peters of any reason or reasons for a possible exclusion of coverage under the terms of his policy with TDC.

We hold, therefore, that TDC must provide a defense and indemnification to Dr. Peters for any claims arising from the November 13, 1989 Wardell complaint.

 The final issue before this court is the denial by the district court of the motion for relief from judgment filed by TDC. W.R.C.P. 60(b). "Appellate review of a district court's decision on a Rule 60(b) motion is generally limited to the question of whether there has been an abuse of discretion." *Forney v. Minard*, 849 P.2d 724, 727–28 (Wyo.1993). The district court is given wide discretion under our Rules of Civil Procedure and discretion is not disturbed " 'unless appellant demonstrates that the trial court abused it and was clearly wrong.' " *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo.1993) (*quoting Claassen v. Nord*, 756 P.2d 189, 193 (Wyo.1988)).

The district court found that the interrogatory response which was omitted from the material filed by TDC in support of its motion for summary judgment had no affect on the district court's final order. There is no abuse of discretion in this finding. The July 20, 1989 interrogatory response from Wardell, filed in connection with the action against the orthopedic sur-

geon and West Park Hospital, did not present a "claim" against Dr. Peters under the unambiguous terms of the ICA policy.

## IV. CONCLUSION

The theme of much of the argument in these cases has been equitable in nature. It is not fair that the failure to name Dr. Peters as a party in the May 12, 1989 Wardell complaint resulted in a different insurance carrier having to assume the responsibility of defense and possible indemnification for any judgment. However, this is the position which "claims made" insurers advocated in issuing these policies which depend, not upon the date of the occurrence, but upon the date the claim was made or made and reported to establish coverage obligations.

The decisions of the district court in Appeal No. 92–68 and Appeal No. 92–270 are affirmed.