Chad VERSCHOOR and Kelly
L. Verschoor, Appellants
(Plaintiffs),

v.

MOUNTAIN WEST FARM BUREAU MU-
TUAL INSURANCE COMPANY, a Wyo-
ming corporation, Appellee (Defendant).

No. 94–282.

Supreme Court of Wyoming.

Dec. 8, 1995.

C. Edward Webster, II, Cody, for appellants.

George E. Powers, Jr. and Kay Lynn Bestol of Sundahl, Powers, Kapp & Martin, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

TAYLOR, Justice.

Injured on the job, a contract ranch hand rejected costly medical care until his employer's insurance agent promised that treatment and rehabilitation would be covered. When the ranch hand's recovery was cut short by the insurance company's refusal to exceed the coverage limits of the employer's policy, he sued the insurance company, alleging promissory estoppel and negligent misrepresentation. Finding material issues of fact on both counts, we reverse the district court's summary judgment and remand for trial on the merits.

## I. ISSUES

Appellants, Chad and Kelly Verschoor, submit the following issues:

### Issue No. I

The lower court erred, as a matter of law, in finding that the doctrine of promissory estoppel did not apply in this instance.

### Issue No. II

Summary Judgment was improper on Appellants' claim of promissory estoppel for the reason that material questions of

fact existed as to each of the elements thereof.

### Issue No. III

The District Court applied an improper standard in finding no material questions of fact existed with respect to Appellants' claim of negligent misrepresentation.

### Issue No. IV

Questions of material fact exist as to all of the elements of negligent misrepresentation, which questions of fact preclude entry of Summary Judgment.

### Issue No. V

Appellants' claim for loss of consortium is valid under the facts of this case and Summary Judgment should not have been granted.

### Issue No. VI

Questions of material fact exist as to whether Appellee is liable to the Appellants for punitive damages because of Appellee's willful and wanton misconduct.

Appellee, Mountain West Farm Bureau Mutual Insurance Company (Mountain West), states the following issues:

1. May promissory estoppel be used to create insurance coverage when the promisee has not forfeited any advantage?

2. Did the district court properly award summary judgment on the issue of promissory estoppel when no reasonable person could find that an unambiguous promise was made, that any statement made was calculated to induce reliance, that Plaintiffs relied on any statements of Defendant, that any such reliance was reasonable, that Plaintiffs suffered a detriment, or that the equities would support enforcement of any alleged promise?

3. Did the district court properly award summary judgment on the issue of negligent misrepresentation when no reasonable person could find that a misrepresentation was made, that the Defendant intended that Plaintiffs rely on any misrepresentations of Defendant, that any such reliance was reasonable or justifiable, or that Plaintiffs relied to their detriment?

4. Did the district court properly award summary judgment on the loss of consortium claim when only pecuniary damages are available for the spouse's underlying claims?

5. Did the district court properly award summary judgment on the claim for punitive damages when Plaintiffs presented no evidence whatsoever of willful, wanton, or outrageous conduct by Defendant?

## II. FACTS

To support his wife and two young children, Chad Verschoor (Chad) went to work in April, 1991 for the Risinger Ranch near Cody, Wyoming. The ranch was managed by corporate minority owners Dennis and Sue Shore (the Shores), who hired Chad at a rate of $5.00 per hour to do general ranch work and odd jobs. A few days after starting work, Chad injured his knee on the job by jumping from the back of a slowly moving truck while feeding cattle.

Without savings or insurance of his own, and having been told by the Shores that the ranch's insurance would not cover him, Chad initially decided against the anterior ligament reconstructive surgery and twelve months of rehabilitation which had been recommended following examination by an orthopedic surgeon. After getting a message from Sue Shore that the ranch may, after all, have insurance coverage for him, Chad contacted Mountain West's agent in Cody, Frank Young (Young). Chad told Young the nature of the injury, the type of surgery that was recommended, the length of rehabilitation required, and the name of the physician in Cody who recommended that regimen. According to Chad, Young's response was pretty clear:

> [Frank Young] says, "Get your operation done." He says, "Just send me your bills and we'll pay for your operation and your rehabilitation."
>
> So I called Dr. Biles and I set up the appointment for my operation.

Young acknowledged the conversation, but was unable to recall many details. Young

admitted telling Chad to bring the bills in, but denied promising to pay them. Following the conversation, Chad went ahead with the surgery.

Later, as he began rehabilitation, Chad discovered that Mountain West's largesse was not without limits. The insurance company paid $5,000.00 toward the cost of his surgery, telling Chad that the $5,000.00 was the limit on medical coverage under the insurance policy carried by the ranch. Thus cut off, Chad was unable to get proper and timely rehabilitation for his injured knee.

Chad and his wife, Kelly, filed suit against the ranch and Mountain West alleging, as to the latter, claims for negligent misrepresentation, promissory estoppel, bad faith, and Kelly's loss of consortium. The district court permitted an amendment of the complaint to add the Shores as defendants and delete the bad faith claim. The amended complaint also added an allegation that Mountain West's negligent misrepresentation was undertaken willfully and intentionally, praying for punitive damages from Mountain West.

Following extensive discovery, summary judgment was entered in favor of Sue Shore. Partial summary judgments were entered in favor of Dennis Shore and the ranch on the issue of punitive damages. Chad and Kelly subsequently settled their remaining claims with Dennis Shore and the ranch.

Finding no evidence of willful or wanton misconduct by Mountain West, the district court dismissed Chad's claim for punitive damages. Finding that neither promissory estoppel nor negligent misrepresentation would support Kelly's loss of consortium claim, the district court dismissed that claim also. Chad's claim against Mountain West for promissory estoppel was dismissed as a matter of law, and his negligent misrepresentation claim was dismissed as entailing no question of material fact—a finding the district court attributed to Chad's "inconsistent and varied" accounts of what the Mountain West agent, Young, had told him.

## III. DISCUSSION

### A. SCOPE AND STANDARD OF REVIEW

■ Contrary to their generally poor appellate reputation, summary judgments are desirable tools for eliminating trials when only questions of law are truly at issue, piercing formal allegations to reach the merits where no material issue of fact is found. W.R.C.P. 56(c); *Bryant v. Hornbuckle*, 728 P.2d 1132, 1135 (Wyo.1986). An issue of fact is material if it has the capacity to establish or refute an essential element of a claim or defense thereto. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1324 (Wyo.1995).

■ Without deference to the district court's determinations, we examine the record in a light most flattering to the party opposing summary judgment, affording that party the benefit of all favorable inferences which may fairly be drawn from the record. *Adkins v. Lawson*, 892 P.2d 128, 130 (Wyo. 1995). This contemplates a procedure whereby the moving party establishes a prima facie case for summary judgment, obliging the opposing party to marshal admissible evidence, as opposed to general or conclusory allegations, to establish genuine issues of material fact. *Hanna v. Cloud 9, Inc.*, 889 P.2d 529, 534 (Wyo.1995). Competent, admissible evidence is required because the salutary value of summary judgments would seldom find vindication if trial could be forced on naked assertions that issues of material fact exist. *Johnson v. Soulis*, 542 P.2d 867, 871 (Wyo.1975).

### B. PROMISSORY ESTOPPEL

Chad's case hinges upon the promise of Mountain West's agent that the insurance company would pay for Chad's surgery and rehabilitation if Chad would forward his bills. The palliative effect of such a promise, made on behalf of an insurance carrier, is not subject to reasonable dispute among any in Wyoming who have suffered serious injury or illness. The legal effect of such a promise may be to create a contract, notwithstanding the absence of consideration or a writing, even in those cases where the statute of frauds would, otherwise, apply. *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 815 (Wyo.1992). Such apparent magic actually has august roots in contract law:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981) The resultant promissory estoppel prevents denial of insurance coverage where injustice would otherwise result. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1029 (Wyo.1993).

▇▇▇ Mountain West suggests that no agreement was possible because Young was not, technically speaking, endowed with the capacity to make any promises regarding coverage. This argument is clearly untimely, not having been raised before the district court. In fact, Mountain West characterized Young as their "local insurance agent" in Cody in submissions to the district court. Mountain West's failure to place Young's agency at issue before the district court obviated any need for Chad to adduce evidence on the issue to avoid summary judgment. *Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239, 248 (Wyo.1992). Besides, the existence of agency and the scope of an agent's authority are questions of fact for a jury. *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 62 (Wyo.1995).

▇▇▇ The district court rejected promissory estoppel in this case finding, as a matter of law, that the theory would not apply "to create coverage which is not found within the contract of insurance." Were he seeking coverage under an insurance contract *he* held with Mountain West, Chad agrees that the district court's holding would be proper. Estoppel and waiver will not operate to create additional coverage in an existing contract of insurance. *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255, 1261 (Wyo.1988) (*quoting* 16 Appleman, *Insurance Law and Practice*, 629–30 (1944)); *Sowers v. Iowa Home Mut. Cas. Ins. Co.*, 359 P.2d 488, 493 (Wyo.1961); *see also State Farm Mut. Auto. Ins. Co. v. Petsch*, 261 F.2d 331, 335 (10th Cir.1958).

However, no retreat from *St. Paul Fire and Marine Ins. Co.* and *Sowers* is required to make room for the possibility that Young's promises to Chad resulted in the *formation* of an entirely new contract of insurance, not under a theory of equitable estoppel but by virtue of promissory estoppel. *See White v. Continental General Ins. Co.*, 831 F.Supp. 1545, 1559 n. 16 (D.Wyo.1993). Our ruling does not purport to gloss the terms of the insurance contract between the ranch and Mountain West. Rather, we hold that Chad may collect upon Mountain West's promise *to him* to pay for his surgery and rehabilitation, provided he can make his case for that promise to a jury of his peers. *Doctors' Co.*, 864 P.2d at 1029–30.

▇▇▇ We have clearly identified the elements necessary to a claim (or defense) of promissory estoppel in Wyoming:

"(1) a clear and definite agreement; (2) proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and (3) a finding that the equities support the enforcement of the agreement."

*Lavoie*, 840 P.2d at 249 (*quoting Inter–Mountain Threading, Inc. v. Baker Hughes Tubular Services, Inc.*, 812 P.2d 555, 559 (Wyo.1991)). Elements one and two are questions for the fact finder. *Michie v. Board of Trustees of Carbon County School Dist. No. 1*, 847 P.2d 1006, 1009 (Wyo.1993).

Mountain West suggests that reasonable minds could not differ on the failure of their agent's statements to be "clear and unambiguous in their terms," *Inter–Mountain Threading, Inc.*, 812 P.2d at 559, despite their agent's inability to recall much about the conversation and the absence of any other evidence to contradict Chad. Of course, exactly what Young's authority was, as well as what he did or did not promise to Chad on behalf of Mountain West, are questions of fact for a jury.

▇▇▇ On the second element, Mountain West argues that Chad, having benefitted from surgery, cannot demonstrate *detriment* from his reliance upon Mountain West's promise. The refusal of the providers to start Chad on rehabilitation without assur-

ance of payment makes detriment a question of fact. Even without delayed rehabilitation, realization of *some* benefit does not, as a matter of law, overcome pecuniary detriment. *Doctors' Co.*, 864 P.2d at 1029–30. *See also Hunter v. Farmers Ins. Group*, 554 P.2d 1239, 1243 (Wyo.1976) and *Townes v. Jerome L. Howe, Inc.*, 852 S.W.2d 359, 361 (Mo.App. 1993) (incurring medical expenses under belief of coverage constitutes detriment).

■ The question of Chad's detriment may also be critical to the third element of promissory estoppel which questions whether Mountain West's promise should be enforced to avoid an injustice. Whether the *equities* of the situation demand enforcement of the promise is a question of law for the district court to resolve. *Lavoie*, 840 P.2d at 251.

■ When, as here, a jury trial has been requested, the "fact dependent" nature of the first two elements of promissory estoppel precludes summary disposition on the basis of the third element where material questions of fact have been identified. W.R.C.P. 38; *Ruzicka v. Conde Nast Publications, Inc.*, 999 F.2d 1319, 1322–23 (8th Cir.1993). A court's equitable authority to limit recovery as a matter of law is broad, but not absolute. *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn.1992).

## C. NEGLIGENT MISREPRESENTATION

■ Chad claims he was damaged by the failure of Mountain West's agent to inform him of the limit on medical payments under the ranch's insurance policy, asserting that the agent's silence thereon amounted to negligent misrepresentation. Mountain West responds that everyone knows insurance policies have limits and their agent was under no duty to speak. At first blush, establishment of a prima facie case for negligent misrepresentation would appear to be simple compared to the relative complexities associated with establishing promissory estoppel:

> The elements of a negligent misrepresentation claim are generally recognized to be as follows: False information supplied in the course of one's business for the guidance of others in their business, failure to exercise reasonable care in obtaining or

relating the information, and pecuniary loss resulting ' from justifiable reliance thereon. Restatement of Torts (Second) § 552, p. 126 (1977).

*Duffy v. Brown*, 708 P.2d 433, 437 (Wyo. 1985). *Davis v. Davis*, 855 P.2d 342, 348–49 (Wyo.1993) instructs us upon the fallacy of assuming ease of proof on such a claim. Mountain West adds that *Duffy* requires proof of negligent misrepresentation to be by clear and convincing evidence, justifying the district court's finding that "a possible misunderstanding but not an actual misrepresentation" could not meet such a heightened standard of proof.

■ *Duffy* treats fraudulent misrepresentation and negligent misrepresentation conjunctively, perhaps permitting the incorrect conclusion that because *fraudulent* misrepresentation "must be established by clear, unequivocal and convincing evidence," *negligent* misrepresentation might also be subject to that heightened standard of proof. *Duffy*, 708 P.2d at 437. Recognizing similarities, Judge Brimmer notes the "fundamental difference" that "actual intent" is requisite to fraudulent misrepresentation, while only a " 'fail[ure] to exercise reasonable care' " is necessary for negligent misrepresentation. *International Surplus Lines Ins. Co. v. University of Wyoming Research Corp.*, 850 F.Supp. 1509, 1525 (D.Wyo.1994), *aff'd*, 52 F.3d 901 (10th Cir.1995) (hereinafter *Char Fuels* ) (*quoting Duffy*, 708 P.2d at 437; *Husman, Inc. v. Triton Coal Co.*, 809 P.2d 796, 801 (Wyo.1991); and *Matter of Reed's Estate*, 566 P.2d 587, 590–91 (Wyo.1977)).

■ The distinguishing elements of fraudulent misrepresentation and negligent misrepresentation "are the state of mind of the person who supplied the information and the standard of proof that must be met by the plaintiff." *Browne v. Maxfield*, 663 F.Supp. 1193, 1202 (E.D.Pa.1987). A Wyoming plaintiff must prove negligent misrepresentation by a preponderance of the evidence, not unlike any other plaintiff in any other action sounding in negligence. *Distad v. Cubin*, 633 P.2d . 167, 180 (Wyo.1981); *Northwest States Utilities Co. v. Ashton*, 51 Wyo. 168, 182, 65 P.2d 235, 238 (1937); W.P.C.J.I., No. 3.01.

■ Summary judgment on negligent misrepresentation is predicated upon the district court's finding that the "descriptions of the insurance agent's alleged statements contained in [Chad's] deposition are inconsistent and varied[.]" Neither the district court nor Mountain West refers us to the statements alleged to be inconsistent or at variance from Chad's basic description of his conversation with Young:

> [Frank Young] says, "Get your operation done." He says, "Just send me your bills and we'll pay for your operation and your rehabilitation."

A jury could conclude that, based upon receipt of the foregoing directive, Chad would proceed with his surgery and rehabilitation, secure in reasonable expectation of full coverage. *Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1503–05 (11th Cir.1993).

■ Mountain West *disputes* Chad's version of his conversation with Young. "[W]hen a disputed fact, if proven, would establish or refute an essential element of the cause of action" summary judgment is improper. *Brown v. Avery,* 850 P.2d 612, 615 (Wyo.1993). The weight given that statement, as opposed to conflicting testimony from Chad, like Chad's credibility itself, is a matter for the jury. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994). Having distinguished fraud cases from this, we find the fraud cases relied upon by Mountain West to be, generally speaking, inapposite. *See, e.g., McKenney v. Pacific First Federal Sav. Bank of Tacoma, Wash.,* 887 P.2d 927, 929 (Wyo.1994).

■ On Young's duty to inform Chad of the limits on the ranch policy, Chad asserts: "Even when a party is under no duty to speak regarding a matter, if he does speak, he must speak the truth and make a full and fair disclosure." *Twing v. Schott,* 80 Wyo. 100, 114, 338 P.2d 839, 843 (1959). Having relied so heavily upon fraud cases, Mountain West takes the interesting tack of suggesting that *Twing,* as a fraud case, is inapposite. Pleased by that belated glimmer of recognition, we nonetheless believe that *Twing* applies in the context of negligent misrepresentation. Even the cases distinguishing fraudulent from negligent misrepresentation recognize that the causes share much more than their distinctions: intent and burden of proof. *Browne,* 663 F.Supp. at 1202. Surely, misrepresentations are as central to either cause as their appellations suggest. *Char Fuels,* 850 F.Supp. at 1525.

■ Mountain West's duty, however, is not simply that of the Good Samaritan. Judge Cardozo states: "Constantly the bounds of duty are enlarged by knowledge of a prospective use." *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275, 276 (1922). Cardozo's echo:

> Rather, one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.

Restatement (Second) of Torts § 552 cmt. a (1977).

■ The absence of privity between Mountain West and Chad is inoffensive to the negligent misrepresentation claim. When several South Dakota farmers approached an insurance agent, only to be told they did not qualify for federal crop insurance, for which they were indeed eligible, the court recognized their claims, notwithstanding the absence of privity. *Aesoph v. Kusser,* 498 N.W.2d 654, 656–57 (S.D.1993). Discounting the need for a formal relationship, the South Dakota Supreme Court held, rather, that the relationship of the parties:

> "must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information to give it with care."

*Id.* (quoting *Littau v. Midwest Commodities, Inc.,* 316 N.W.2d 639, 644 (S.D.1982)).

■ Finally, Mountain West points to a lack of evidence that Young, on behalf of Mountain West, had any intention of inducing Chad to rely upon his statement of coverage. Such intention is not an element of negligent misrepresentation, which requires only that the defendant " 'failed to exercise

reasonable care in obtaining or relating the information.'" *Char Fuels*, 850 F.Supp. at 1525 (*quoting Duffy*, 708 P.2d at 437). What such "reasonable care" may be is suggested by cases which hold that insurance companies who incorrectly verify coverage via telephone calls from third-party health care providers are liable for negligent misrepresentation. *See, e.g., St. Joseph's Hosp. and Medical Center v. Reserve Life Ins. Co.*, 154 Ariz. 307, 742 P.2d 808, 817 (1987) (also reinstated jury verdict on promissory estoppel theory, *sub nom*, "estoppel in pais") and *Hermann Hosp. v. National Standard Ins. Co.*, 776 S.W.2d 249, 253–54 (Tex.App.1989).

The factual dispute in this case is whether Young made the statements attributed to him by Chad. If Chad can carry his burden on that issue, a reasonable jury could find in his favor on negligent misrepresentation.

### D. Loss of Consortium

■ Chad's wife, Kelly, claims damages for loss of Chad's consortium, derivative of Chad's complaints alleging promissory estoppel and negligent misrepresentation. Our resuscitation of Chad's causes of action does not bode as well for Kelly's claims.

■ Although the district court is vested with broad discretion in fashioning relief for promissory estoppel, the action sounds primarily in contract rather than tort. *Tremblay v. Reid*, 700 P.2d 391, 395 n. 1 (Wyo. 1985). "A promise binding under [Restatement (Second) of Contracts, *supra*, at § 90] is a contract[.]" Restatement (Second) of Contracts, *supra*, § 90 at 244 cmt. d.

■ Writing for this court, Justice Brown made it clear that loss of consortium is derivative of actions sounding in tort, and contemplates underlying liability to the spouse for tortious bodily harm, *inter alia. Weaver v. Mitchell*, 715 P.2d 1361, 1369 (Wyo.1986) (*citing* Restatement (Second) of Torts, *supra*, at § 693). Here, no tortious harm is alleged to have been inflicted upon Chad by Mountain West. Damages for loss of consortium are unavailable when the spouse's direct injuries are merely pecuniary. *Browne*, 663 F.Supp. at 1207. Kelly's claim cannot be supported by Chad's complaint alleging promissory estoppel.

■ To the extent Kelly's claim is derivative of Chad's claim for negligent misrepresentation, she is similarly foreclosed:

> The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for pecuniary loss to him [sic] of which the misrepresentation is the legal cause * * *.

Restatement (Second) of Torts, *supra*, at § 552B(1).

### E. Punitive Damages

■ Chad dismissed his bad faith claim against Mountain West early on, while clumsily amending his negligent misrepresentation claim to say that Mountain West, "through its agent Young negligently, willfully and intentionally, misrepresented" that Chad's surgery and rehabilitation would be covered. Mountain West avers that this non-sequitur was belatedly added because punitive damages are "usually proper only in cases where wanton and willful misconduct is alleged." *Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo.1979). We do not favor alteration of a position to suit the interests of a case. *Gray v. Fitzhugh*, 576 P.2d 88, 91 (Wyo.1978).

■ Wanton and willful conduct "must be more than mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadventure, or simple inattention." *Danculovich*, 593 P.2d at 191. Whether or not Young's inability to remember his conversation with Chad is self-serving, it is virtually impossible to associate with Chad's description of the conversation the "'element of outrage'" requisite to an award of punitive damages. *Mayflower Restaurant Co. v. Griego*, 741 P.2d 1106, 1115 (Wyo.1987) (*quoting Weaver*, 715 P.2d at 1369–70).

Nothing in Chad's pleadings or the factual materials he presented supported the charge that Young's misrepresentation was wanton or wilful. Since Mountain West challenged the allegation, Chad was obliged to respond with sufficient admissible evidence to create a genuine issue of fact. *Hanna*, 889 P.2d at 534. In the absence thereof, we hold that

summary judgment in favor of Mountain West shall be upheld as to allegations of willful and wanton conduct and the dependent prayer for punitive damages. *McClellan v. Britain*, 826 P.2d 245, 247 (Wyo.1992).

## IV. CONCLUSION

With his ability to support a wife and two young children hanging in the balance, an injured young man was advised by those who employed him at the time of his injury to contact their insurance agent. Sufficient admissible evidence has been adduced to make the content of the young man's conversation with his employer's insurance agent, as well as his reliance thereon and the reasonable nature of that reliance, issues of fact to be resolved by a jury.

Partial summary judgment in favor of Mountain West is affirmed as to Kelly Verschoor's claims for loss of consortium and Chad Verschoor's claim for punitive damages. The causes of action for promissory estoppel and negligent misrepresentation were preserved sufficiently to merit submission to a jury. The district court's judgment as to those two counts is reversed and remanded for trial on their merits.