Francis B. AHEARN, Appellant
(Plaintiff),

v.

ANDERSON–BISHOP PARTNERSHIP,
a general partnership, Appellee
(Defendant).

Francis B. AHEARN, Appellant
(Plaintiff),

v.

FIRST STATE BANK OF WHEATLAND,
WYOMING, Appellee (Defendant).

Nos. 96–53, 96–217.

Supreme Court of Wyoming.

Oct. 8, 1997.

Steven K. Sharpe of Nicholas Law Offices, L.L.C., Cheyenne, for Appellant (Plaintiff).

Stephen N. Sherard of Sherard, Sherard & Johnson, Wheatland, for Appellee (Defendant) Anderson–Bishop Partnership.

Julie Nye Tiedeken, Cheyenne, for Appellee (Defendant) First State Bank of Wheatland, Wyoming.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

These cases arise out of the sale of property owned by Francis B. Ahearn (Ahearn) near Wheatland, Wyoming. Ahearn contends that Anderson–Bishop Partnership (Partnership) wrongfully obtained confidential information from the First State Bank of Wheatland (Bank) and used that information to purchase Ahearn's property at a grossly deflated price. The district court entered summary judgment in favor of the Partnership and the Bank. Finding the notice of appeal as to the Bank was not timely filed, we dismiss No. 96–217 in this consolidated appeal for lack of jurisdiction. We affirm the summary judgment in favor of the Partnership.

In his opening brief, Appellant Ahearn presents the following issues:

1. Whether the district court erred in granting summary judgment in favor of First State Bank of Wheatland?

 a. Did the district court err in granting summary judgment to the bank on the issues of proximate cause and damages (which issues had never been raised in the bank's summary judgment motion), without first giving the Appellant notice and an opportunity to present evidence or legal argument?

 b. Does a genuine issue of material fact exist with respect to the issues of proximate cause and damages which precludes the entry of summary judgment?

2. Whether the district court erred in granting summary judgment in favor of the Anderson–Bishop Partnership?

 a. Did the district court err in granting summary judgment in favor of the partnership on account of the Appellant's alleged failure to state a claim, when that issue had never been raised by the partnership in its motion and where the Appellant was never given notice or an opportunity to amend his complaint or present argument or evidence in opposition?

b. Did the Appellant state claims against the partnership upon which relief could be granted?

c. Did the district court err in granting summary judgment in favor of Anderson–Bishop Partnership on its affirmative defense of laches?

3. Whether this Court has jurisdiction to hear Appellant's argument with respect to First State Bank of Wheatland, Wyoming?

The First State Bank of Wheatland, appellee, presents six issues for review:

1. Does this Court have jurisdiction to hear the appeal?

2. Did Ahearn have sufficient notice of the Bank's Motion for Summary Judgment and have an opportunity to present evidence and legal argument?

3. Is the Bank entitled to Summary Judgment because Ahearn cannot prove proximate cause or damages?

4. Is there a question of material fact on whether the Bank breached its duty of confidentiality?

5. Did the Bank have a duty to keep facts pertaining to a debtor/creditor relationship confidential?

6. Is the Bank entitled to Summary Judgment on the Plaintiff's claims of fraud?

The Anderson–Bishop Partnership, also an appellee in this appeal, responds with a single issue:

Did the district court err in granting Anderson–Bishop's (Defendant/Appellee) Motion for Summary Judgment?

### FACTS

In the mid–1980s, Ahearn and his wife purchased two separate parcels of land near Wheatland—Tract F and Tract G. Tract F consists of 2.65 acres and Tract G about 4.84 acres. Ahearn constructed a gasoline station/convenience store, the Wheatland Travel Stop, on approximately 2.67 acres of Tract G.

In November 1991, John Bishop (Bishop) approached Ahearn about purchasing property on which to put a bulk plant. At the same time, Ahearn and his wife were contemplat-ing a divorce and had discussed selling the Wheatland Travel Stop. Ahearn later asked Bishop if he had any interest in purchasing the Travel Stop, and Bishop indicated that he did. Ahearn contends that he and Bishop reached an oral agreement whereby Bishop would purchase the Wheatland Travel Stop for $400,000 plus inventory. During mid-January 1992, Bishop advised Ahearn that he intended to enter a partnership with Andrew Anderson (Anderson) to purchase the Travel Stop. Ahearn knew Anderson because Anderson was his fuel supplier, and Ahearn told Bishop he had no problem with that arrangement so long as the deal stayed the same.

A short time later, Ahearn called Anderson to order some fuel. Ahearn mentioned the proposed partnership between Anderson and Bishop to buy the Travel Stop. According to Ahearn, Anderson acknowledged the deal and then stated that they wanted the 1.048 acres next to the Travel Stop (also part of Tract G) for $10,000. When Ahearn told Anderson he did not want to sell the additional acreage for that amount, Anderson responded that, in that case, they (he and Bishop) would not honor Bishop's commitment to buy the property. Ahearn states that although he believed the additional acreage had a fair market value higher than $10,000, he agreed to the terms proposed by Anderson because he was in a financial predicament and under pressure to sell the Wheatland Travel Stop to remove his wife's name from the debt.

Ahearn relates that sometime in March 1992, Anderson showed up at the Travel Stop for a tour of the neighborhood. Ahearn had previously taken Bishop on a similar tour. During the tour, Anderson inquired about Tract F. Two days later, Ahearn called Anderson to order fuel. During the conversation, Anderson told Ahearn that he wanted Ahearn to throw in Tract F at no additional cost, and if he did not, then Anderson was not going to go through with the deal. When Ahearn said he did not want to sell Tract F, Anderson asked how Ahearn intended to pay his fuel bill, which at that time totaled over $40,000. Again, because of his impending divorce, heavy debt load and lack of cash or

other liquid assets to satisfy his financial obligations, Ahearn felt he had no choice but to include the additional acreage so the deal would go through.

The sale of the Wheatland Travel Stop closed on May 21, 1992. After all the documents had been signed, Ahearn states that Anderson commented: "This is what happens to you when you have $35,000 worth of high interest credit card debt." That comment is the basis of this lawsuit. On January 16, 1992, Ahearn had given a copy of his personal financial statement to the Bank, among others. The financial statement revealed that Ahearn had substantial debt, including very high credit card debt, and also that he had very little cash on hand at the Bank. John Bishop's wife, Susan Bishop, worked at the bank at the time and had access to the financial statement. Ahearn contends that the Partnership wrongfully obtained information contained in his financial statement from the Bank and then used it against him to obtain the additional two parcels at a grossly deflated price.

Ahearn filed suit in district court against the Bank and the Partnership. He claimed the Bank breached its duty of confidentiality and engaged in willful and wanton misconduct. Ahearn's claims against the Partnership included intentional interference with contract expectancy/proposed economic advantage, fraud and constructive fraud, improper inducement to breach contract, mistake of fact, mistake of law, and willful and wanton misconduct. On December 19, 1995, the district court filed its decision letter, granting the defendants' separate motions for summary judgment. Subsequently the court entered orders granting summary judgment to the Bank and to the Partnership, each order incorporating by reference the decision letter.

On February 2, 1996, Ahearn, acting pro se at the time, filed a notice of appeal. The caption listed both the Partnership and the Bank, and both parties were served. The notice, however, referred only to the "Order Granting Judgment in favor of Defendant, Anderson-Bishop Partnership entered on January 8, 1996." Ahearn had not received a copy of the Order Granting Summary Judg-

ment In Favor of First State Bank of Wheatland, Wyoming, which was filed on January 22, 1996, and, according to his affidavit, he believed he had done everything necessary to perfect his appeal as to both defendants. On May 3, 1996, Ahearn secured counsel to represent him on appeal; counsel discovered the January 22 order when he reviewed the court file. Ahearn immediately filed an amended notice of appeal. The Bank responded with a resistance and motion to strike the amended notice. After fully considering the matter, this court entered an order on June 5, 1996, finding the notice of appeal untimely and dismissing the Bank as an appellee.

In the meantime, Ahearn sought relief in the district court through a W.R.C.P. 60(b) motion. After a hearing, the district court found that neither Ahearn nor his attorney at the time was ever mailed a copy of the signed order dated January 22; that the clerk's office failed to comply with W.R.C.P. 77 which requires the clerk to mail a copy of any order or judgment to all parties immediately after entry; and that depriving Ahearn of his right to appeal under these circumstances would violate due process. Consequently, the court entered an order vacating the January 22 order and re-entering the order effective August 1, 1996, thereby extending Ahearn's time for appeal. Ahearn timely appealed the August 1 order and subsequently moved for consolidation of the two cases, *Ahearn v. Anderson–Bishop Partnership* and *Ahearn v. First State Bank of Wheatland, Wyoming.* Having granted the motion, we have before us now the consolidated appeal.

### STANDARD OF REVIEW

Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.,* 929 P.2d 1228, 1232 (Wyo.1996); W.R.C.P. 56(c). A material fact is any fact which, if proven, would establish or refute an essential element of a claim or defense asserted. *Rissler & McMurry,* 929 P.2d at 1232. This court evaluates the propriety of a summary judgment using the same stan-

dards and materials used by the district court. *Id.* The record is reviewed from the vantage most favorable to the nonmoving party, awarding that party all favorable inferences which may be drawn from the facts. *Id.* The movant has the initial burden of proving the nonexistence of a genuine issue of material fact. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1297 (Wyo.1995). Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. *Id.* A grant of summary judgment may be affirmed on any proper legal grounds supported by the record. *Rissler & McMurry,* 929 P.2d at 1232.

## DISCUSSION

### First State Bank of Wheatland

 Initially, the Bank challenges the timeliness of Ahearn's appeal and, thus, our jurisdiction to hear the case. The limitations on the time within which an appeal may be taken are jurisdictional and mandatory. W.R.A.P. 1.03, *Martinez v. City of Cheyenne,* 791 P.2d 949, 954 (Wyo.1990). A challenge to subject matter jurisdiction may be asserted at any time by any interested party or *sua sponte* by the court at the trial or appellate level. *DB v. State, Dep't of Family Serv.,* 860 P.2d 1140, 1146 (Wyo.1993).

Our jurisdiction in this appeal is dependent on the interworking of the rules of civil and appellate procedure. Rule 77(d) of the Wyoming Rules of Civil Procedure states, in relevant part:

> Immediately upon the entry of an order or judgment the clerk shall mail a copy thereof in the manner provided in Rule 5 to every party who is not in default for failure to appear, and who has not in person or by attorney acknowledged receipt of a copy thereof.... *Lack of notice of the entry*

*by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted by the Wyoming Rules of Appellate Procedure.*

(Emphasis added.) Rule 2.01(a)(i) of the Wyoming Rules of Appellate Procedure authorizes the district court to extend the time for filing a notice of appeal, upon a showing of excusable neglect, for a period not to exceed 15 days past the original time prescribed for appeal. A motion seeking an extension must be filed and the order entered within 45 days of the entry of the appealable order. Ahearn could not seek relief under W.R.A.P. 2.01(a)(i) because he did not discover the judgment had been entered until the maximum time for an extension under the rule had expired. He therefore sought relief under W.R.C.P. 60(b), which authorizes the district court to provide relief from a final judgment in a number of circumstances.

 The issue here is whether Rule 60(b) can be used to avoid the mandate of Rule 77(d) that lack of notice of entry of judgment does not affect the time to appeal except as permitted in the appellate rules. Several federal circuit courts of appeal have considered the issue and held that in certain unique or extraordinary circumstances it would not be inconsistent with the rules or the intent of Congress for the district court to vacate and reenter the original order for the purpose of reviving a lost right to appeal.[1] Because of the specific language of Rule 77(d), as well as the need for finality of judgments embodied by the time limits in the appellate rules, most circuits allow Rule 60(b) relief only where the appellant has exercised due diligence to ascertain whether the judgment has been entered or has given sufficient reason for the lack of such diligence. *Spika v. Village of Lombard, Ill.,* 763 F.2d 282, 285 (7th Cir.

---

1. *See* 9 MOORE'S FEDERAL PRACTICE ¶ 204.13[5] (2d ed.1991). Wyoming's Rule 60(b) and Rule 77(d) are substantially the same as their federal counterparts, and we found a good deal of federal case law on the issue presented here. In 1991, however, the federal appellate rules were liberalized to authorize a district court to reopen the time for appeal if it finds that a party has not received notice of the judgment or order and no

party would be prejudiced. F.R.A.P. 4(a)(6). A motion for an extension under the amended rule must be filed "within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier." *Id.* Since the amendment, the focus of the federal case law has shifted to whether the requirements of Rule 4(a)(6) have been satisfied.

1985), *cert. denied* 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986) (citing holdings and limitations of various circuits). We agree that, in order not to undermine the purpose of W.R.A.P. 2.01(a)(i), the relief available under Rule 60(b) must be narrowly delimited. Therefore, we hold that Rule 60(b) is available in situations where a party does not learn of a judgment until after the time provided in W.R.A.P. 2.01(a)(i), but relief is limited to only those instances where the party has shown due diligence, or sufficient reason for the lack thereof, or other special circumstances. *See Kennedy v. Kennedy,* 483 P.2d 516, 518 (Wyo.1971) ("Rule 60(b) was not intended as a means of enlarging ... the time for appeal except in compelling circumstances where justice requires that course.").

 Ahearn asserts he is entitled to relief because the clerk did not mail notice of the entry of the final judgment. That factor, in and of itself, is not enough. Courts have uniformly held that Rule 77(d) bars relief when the sole reason asserted for relief is the failure of a litigant to receive notice of the entry. *Spika,* 763 F.2d at 286; *Hensley v. Chesapeake & Ohio Ry. Co.,* 651 F.2d 226, 229 (4th Cir.1981). As additional considerations, Ahearn cites that he was acting pro se from January 23 through May 2, 1996, and he believed he was appealing the district court's ruling as to both parties. Though clearly Ahearn did not understand the requirements for perfecting an appeal, this court has consistently refused to give special consideration to litigants who choose to proceed without counsel. *Annis v. Beebe & Runyan Furniture Co.,* 685 P.2d 678, 680 (Wyo.1984). Pro se litigants must comply with the same procedural standards as litigants represented by counsel. *Stone v. Stone,* 842 P.2d 545, 547 (Wyo.1992). We need not draw a bright line at this juncture, but suffice it to say that the circumstances here do not show sufficient diligence, or reason for the lack thereof, or other special circumstances sufficient to warrant Rule 60(b) relief. Because the district court's

grant of Rule 60(b) relief was improper, Ahearn's notice of appeal as to the Bank was untimely, and we dismiss matters pertaining to the Bank for lack of jurisdiction.

### Anderson–Bishop Partnership

Ahearn's complaint set forth six causes of action against the Partnership which fall into three general categories: interference with contract or prospective contract, fraud and mistake. We consider the fraud and mistake claims together because they are similar in terms of pleading and proof requirements, and each rests on the same underlying assertion—that the Bank improperly shared confidential financial information with the Partnership and the Partnership withheld that fact from Ahearn.

#### 1. Interference

 Ahearn alleges that the Partnership contacted Bishop,[2] entered into a partnership with him, and caused him to back out of the agreement to purchase the Wheatland Travel Stop. The alleged agreement between Ahearn and Bishop consisted of 2.67 acres, at a price of $400,000 plus inventory, to close within 30 days. These allegations comprise his claims for intentional interference with contract expectancy/prospective economic advantage and improper inducement to breach contract.

 Wyoming has adopted the Restatement formulations of the tort of intentional interference with a contract, *First Wyoming Bank, Casper v. Mudge,* 748 P.2d 713, 715 (Wyo.1988) (quoting Restatement, Second, Torts § 766 (1979)), and the tort of intentional interference with a prospective contractual relation, *Four Nines Gold, Inc. v. 71 Const., Inc.,* 809 P.2d 236, 238 (Wyo.1991) (quoting Restatement, Second, Torts § 766B (1979)). Each of these torts requires that the interference be both intentional and improper. Restatement, Second, Torts § 767 cmt. a (1979). A party to a contract cannot be liable for tortious interference with that contract. *Kvenild v. Taylor,* 594 P.2d 972, 977 (Wyo.1979). Both tortious interfer-

**2.** The record shows that Bishop contacted Anderson, and the two formed the Partnership in order to purchase the Travel Stop.

ence theories lie only against outsiders who interfere with the contractual expectancies of others. *Id.* These torts will not lie against someone exercising an equal right to purchase property from a particular seller or competing in the marketplace to purchase the property. *See Martin v. Wing,* 667 P.2d 1159, 1162 (Wyo.1983).

The undisputed facts that relate to this issue are as follow. Ahearn and Bishop began negotiating the purchase of the Wheatland Travel Stop in late 1991. Ahearn presented Bishop with a written contract, but Bishop, concerned about the terms and financing, did not sign the document. In early 1992, Bishop informed Ahearn that he wanted to create a partnership with Anderson in order to buy the Travel Stop. Ahearn agreed as long as the terms remained the same. He then proceeded to deal with the Partnership, and the parties eventually reached an agreement that culminated in the sale of the Travel Stop to the Partnership.

Even though the parties dispute whether or not Bishop and Ahearn reached an oral agreement prior to the agreement with the Partnership, no triable issue as to this material fact has been raised because the summary judgment materials establish no improper interference. First, the Partnership was not an outside party that came along and induced Bishop to back out of the contract (or proposed contract). Bishop created the Partnership for the very purpose of purchasing the Travel Stop. Additionally, the Partnership had an equal right to purchase the property. Finally, Ahearn was fully aware of the formation and purpose of the Partnership. Regardless of whether Bishop and Ahearn had reached an agreement, Ahearn voluntarily began negotiating with Anderson and Bishop as partners, eventually entering into a contract of sale and ultimately selling the Travel Stop to the Partnership. The Partnership is entitled to summary judgment on the interference claims.

### 2. *Fraud and Mistake*

■ Ahearn's complaint included claims for both actual and constructive fraud. He alleges that the Partnership, by its expressions and conduct, falsely represented to him that negotiations for the purchase of the property were being conducted fairly, openly and without benefit of his personal financial information, and that Ahearn relied on that representation when he agreed to sell the additional parcels at a grossly deflated price. Ahearn avers that the fraudulent representations, suppression of material facts and negligent misrepresentation of the true facts constituted a constructive fraud and, had he known the true facts, he would not have entered into the agreement to sell the Travel Stop. In addition to the fraud claims, Ahearn alleges that by virtue of the Partnership's acts and omissions, he entered into the contract for the sale of his real property under mistake of fact and mistake of law. The essence of Ahearn's fraud and mistake claims is his assertion that the Bank wrongfully provided the Partnership information from his financial statement and the Partnership did not reveal that fact to Ahearn.

■ The Wyoming Rules of Civil Procedure mandate that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," W.R.C.P. 9(b), and we have applied that requirement literally. *McKenney v. Pacific First Fed. Sav. Bank,* 887 P.2d 927, 928–29 (Wyo.1994). A plaintiff who alleges fraud must do so clearly and distinctly, and fraud will not be imputed to any party when the facts and circumstances out of which it is alleged to arise are consistent with honesty and purity of intention. *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo.1985). Fraud must be established by clear, unequivocal and convincing evidence, and will never be presumed. *Id.* The standard of proof for mistake is clear, convincing and well-founded evidence. *Shrum v. Zeltwanger,* 559 P.2d 1384, 1387 (Wyo.1977); *Goodson v. Smith,* 69 Wyo. 439, 458, 243 P.2d 163, 171 (Wyo.1952).

■ We note at the outset that the fact the Partnership may have received information from Ahearn's financial statement, by itself, will not support Ahearn's claims.[3] It is

---

**3.** According to Ahearn's deposition, he bases his belief that the Partnership received information from his financial statement on the following: 1) Anderson's alleged statement at closing: "This is

not fraudulent to possess information about someone's financial or personal status, and the Partnership had no general obligation to inform Ahearn of all the information it possessed about Ahearn as it proceeded to negotiate the purchase of the Travel Stop. In fact, it is undisputed that the Partnership knew of Ahearn's pending divorce and need to sell the Travel Stop, as well as the fact that Ahearn owed Anderson $40,000 for fuel, and that Ahearn was aware the Partnership knew those facts. Businesses are presumed to act in their own self-interest. *Lavoie v. Safecare Health Serv., Inc.,* 840 P.2d 239, 252 (Wyo. 1992). We have said that it is not uncommon in business dealings for the parties to seek the best terms possible, and doing so is not inconsistent with honesty and purity of intention. *Id.* Thus, in order for Ahearn's claims to succeed, Ahearn must show by clear and convincing evidence that the Partnership *improperly* obtained information about Ahearn's financial condition.

Ahearn rests his assertion that the information came from the Bank in part on the fact that Susan Bishop, John Bishop's wife, worked at the Bank and had access to his financial statement. In addition, he relies on the fact that he gave his financial statement only to the Bank, his divorce attorney, his accountant, and the school district business manager. The affidavit from the school district business manager indicates that the school district did not reveal information from the financial statement to third parties other than the school district's insurance companies and/or bonding agencies. Ahearn did not produce affidavits from those third parties. The affidavit from Ahearn's attorney states he furnished the financial statement to the attorney representing Kathleen Ahearn in the divorce. Ahearn did not produce affidavits from Mrs. Ahearn or her attorney. Nor does the record include an affidavit from Ahearn's accountant. The record contains deposition testimony from Mike

Daly (Bank president) and Susan Bishop, both denying that they disseminated information to the Partnership, as well as affidavits from Anderson and Bishop denying that they received information from the Bank in general and Susan Bishop specifically. Ahearn states in his deposition that he does not know how the Partnership received the information: "I don't know if they received it in the form of printed material, face-to-face verbal, phone conversation, or otherwise." Further, Ahearn testified that he had no other witnesses who could testify that the Bank released confidential information.

Viewed against the record as described above, Ahearn's allegations and inferences are insufficient to create a genuine issue of material fact that must be resolved by a trial. Ahearn has no personal knowledge of any impropriety on the part of the Bank, nor any witness or other evidence to substantiate his belief that the Bank released information from his financial statement. He has not eliminated the possibility that the Partnership could have received information from the financial statement from another source. Evidence opposing a summary judgment that is conclusory or speculative is insufficient to demonstrate that a material fact exists, and the trial court has no duty to anticipate possible proof. *First State Bank of Wheatland v. American Nat'l Bank,* 808 P.2d 804, 806 (Wyo.1991). Likewise, an unsubstantiated belief does not create a material issue of fact precluding summary judgment. *Cumana Investments S.A. v. Fluor Corp.,* 593 F.Supp. 310, 314 (D.Del.1984). The most Ahearn could hope for is that a fact finder would disbelieve the persons who have submitted affidavits. This hope alone cannot defeat a properly supported motion for summary judgment, *see Vantage Point, Inc. v. Parker Bros., Inc.,* 529 F.Supp. 1204, 1213–14 (E.D.N.Y.1981), particularly in cases alleging fraud or mistake.

what happens to you when you have $35,000 worth of high interest credit card debt," 2) the fact that Anderson offered to pay $10,000 for the additional acre in Tract G, and 3) the fact that Anderson asked how Ahearn intended to pay his $40,000 fuel bill if the deal didn't go through with Tract F thrown in for nothing. From this, Ahearn asserts that a jury could infer that the

Partnership had information from the financial statement because the statement showed: 1) credit card debt of $19,340 plus revolving lines of credit of $15,400, which when added together total $34,740; also a credit card limit of $35,900; 2) a cost and market value for Tract F of $10,000; and 3) cash on hand and in banks of $600.

We briefly address Ahearn's contention that the district court improperly decided the summary judgment on issues not raised by the Partnership in its motion, thereby depriving Ahearn of an opportunity to be heard. W.R.C.P. 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our opinion, the materials before the trial court did show that the Partnership was entitled to a summary judgment on its motion. We agree that the court normally should give the parties notice when it intends to rely on a legal doctrine or precedents other than those briefed and argued by the litigants.[4] 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2725, at 112 (2d ed.1983). However, the fact that judgment was granted on reasons different than those assigned by the movant is immaterial where, as here, the motion was properly granted on the undisputed facts shown and on issues presented by Ahearn's complaint. *Board of Nat'l Missions of Presbyterian Church in the U.S. v. Smith*, 182 F.2d 362, 364–65 (7th Cir.1950); *Broderick Wood Prods. Co. v. United States*, 195 F.2d 433, 436 (10th Cir.1952). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Note, 1963 Amendments of the Federal Rules of Civil Procedure, Rule 56(e); *Kuehne v. Samedan Oil Corp.*, 626 P.2d 1035, 1039 (Wyo. 1981). The summary judgment materials in this case simply do not present the clear and convincing evidence necessary to find fraud or mistake nor any genuine question of material fact that would preclude summary judgment, and we affirm the district court.

### CONCLUSION

With regard to the Bank, the district court's grant of Rule 60(b) relief was improper, thus making Ahearn's notice of appeal untimely. We therefore dismiss the appeal of the Order Granting Summary Judgment In Favor of First State Bank of Wheatland, Wyoming. As to the Partnership, we find no genuine issues of material fact and that the Partnership is entitled to judgment as matter of law. Consequently, we affirm the district court's Order Granting Defendant Anderson–Bishop Partnership's Motion for Summary Judgment in all respects.

---

4. The district court held a hearing on the motions for summary judgment, but that hearing was apparently not recorded nor otherwise preserved for the record as provided by W.R.A.P. 3.03. As such, we do not know what was argued at the hearing. Ahearn did not seek reconsideration by the trial court, nor does his brief on appeal explain how he may have been prejudiced by not having an opportunity to be heard on any particular issue.